151 So. 901

**STATE v. HEYMANN.**

No. 32580.

Nov. 27, 1933.

Milling, Godchaux, Saal & Milling, of New Orleans (Nicholas Callan, of New Orleans, of counsel), for appellant.

Charles J. Rivet, of New Orleans, for the State.

O'NIELL, Chief Justice.

The state tax collector claims a license tax from the defendant for being engaged in the business of operating an office building and deriving revenue therefrom. He owns and operates the Audubon building, on Canal street, at the corner of Burgundy street, in New Orleans.

The building is a ten-story structure, known generally as an office building. The ground floor is rented and used for retail stores, and the basement and half of the second floor are used in connection with the stores on the ground floor, and were designed for such use, and not for offices. The ninth and the tenth floors have not been divided into or devoted to offices, but are used in connection with the management of the office building. The defendant, in the operation of the office building, maintains three passenger elevators, a freight elevator, and a hydraulic lift from the basement to the sidewalk, and employs a manager and a superintendent, with three assistants, and five elevator boys, six day porters, two night porters, and seven scrubwomen. The amount of rent collected for the ground floor and for that part of the second floor that is used in connection with the retail stores on the ground floor, for all of this year, is $68,127.12. The amount of rent collected for the space in the office building, reached by the passenger elevators, and properly known as the office building, is $41,656.81. The total amount of rent or revenue collected for this year is, therefore, $109,783.93. The tax collector claims the license tax, which the statute fixes at "one-tenth of one per cent on the gross rent," on the whole amount of $109,783.93, which includes, not

only the $41,656.81 of rent collected from the business of operating the office building, properly so known, but also the $68,127.12 of rent collected from the mercantile establishments on the ground floor and that part of the second floor connected therewith. The judge who tried the case gave judgment for all that the tax collector claims, $109.19 (should be $109.78), with the statutory interest thereon at 2 per cent. per month from the 1st day of March, 1933, and 10 per cent. attorney's fee. The defendant has appealed from the decision.

The license tax is claimed only for the year 1933, under section 37 of Act No. 190 of 1932, p. 651, viz.:

"Section 37. Any person, firm, corporation or association of persons operating any office building and deriving revenue therefrom, whether same is operated in connection with any other business or not, shall pay a license tax equal to one-tenth (1/10) of one per cent of the gross rent or compensation therefrom; provided, however, that any person, firm, corporation or association of persons owning and occupying any portion of the said office building in the carrying on of its own business that only that part of the rent or compensation received from other persons, firms, corporations or association of persons shall be deemed as rent or compensation under this Act. Provided, further, that where the said building is owned by a subsidiary corporation, all of the capital stock of which, except directors qualifying shares, if any, are owned by said corporation, shall be considered the same as if the building were owned by the parent corporation and the area used by them for which rent is paid shall not be considered as rent under this section."

The defendant pleaded that the attempt of the Legislature to levy a license tax upon the business of operating an office building was violative of the Constitution, and invalid, for the following reasons:

I. That the right of a property owner to rent his property to others and to receive the rent is an inherent right, or attribute of ownership, which the Legislature must recognize, and not a *privilege* for which the Legislature may exact a license tax.

II. That the statute is void for vagueness, in that it does not describe or define, or sufficiently identify, an "office building," within the meaning of the statute.

III. That the tax sought to be imposed is not in fact a license tax, or privilege tax, but an income tax, because it is sought to be imposed, not merely upon the privilege of operating an office building, but only upon that privilege when revenue is derived therefrom; and, as an income tax, it is void, first, because no such object is expressed or indicated in the title of the statute, as required by section 16 of article 3 of the Constitution, and, second, because the tax is sought to be levied on *gross* revenue, in violation of section 1 of article 10 of the Constitution, authorizing an income tax to be levied only upon *net* income.

IV. That, if the tax sought to be imposed is not an income tax, it is a tax upon the income from real estate, which is, in effect, a direct tax upon the property itself, or an ad valorem tax; and, as a tax upon the property itself, it is void, for the reasons: (a) That it is not preceded by an assessment, as required by section 1 of article 10 of the Con-

stitution; (b) that it is in excess of the limitation prescribed by section 3 of article 10 of the Constitution, for ad valorem taxes; (c) that it is not a uniform tax on all property of the same class, as required by section 1 of article 10 of the Constitution; and (d) that the tax discriminates illegally against owners who lease their buildings for offices, and in favor of those who occupy their buildings, and in favor of those who lease their buildings, in whole or in part, for purposes other than for offices; such discrimination being violative of section 1 of article 10 of the Constitution of Louisiana, and violative of the Fourteenth Amendment of the Constitution of the United States.

V. That, as a license tax, the tax is invalid because it is not graduated or graded, and the business is not classified, as required by section 8 of article 10 of the Constitution.

### Opinion.

■ I. The eighth section of article 10 of the Constitution provides: "License taxes may be levied on such classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession, as the Legislature may deem proper, except," etc. Of course, an isolated instance of the leasing of property by its owner would not be deemed pursuing a trade, business, occupation, vocation, or profession. But the operating or managing of an office building, whether by the owner or by a lessee of the building, is now well recognized as the carrying on of an occupation or business. In the fifteen cases bearing the title Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, in deciding whether the corpora-

tions were "engaged in business," and hence subject to the excise tax levied by the Act of Congress approved August 5, 1909, known as the Corporation Tax Law, 36 Stat. at L. 11, 112–117, c. 6, § 38, the court said:

"What we have said as to the character of the corporation tax as an excise disposes of the contention that it is direct, and therefore requiring apportionment by the Constitution. It remains to consider whether these corporations are engaged in business. 'Business' is a very comprehensive term and embraces everything about which a person can be employed. Black's Law Dict. 158, citing People ex rel. Hoyt v. Tax Com'rs, 23 N. Y. 242, 244. 'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' 1 Bouvier's Law Dict. p. 273.

"We think it is clear that corporations organized for the purpose of doing business, and actually engaged in such activities as * * * managing office buildings * * * are engaged in business within the meaning of this statute, and in the capacity necessary to make such organizations subject to the law."

In the four cases bearing the title Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 468, 68 L. Ed. 949, it was said:

"A corporation owning and renting an office building is engaged in business within the meaning of an excise statute. Flint v. Stone Tracy Co., supra [220 U. S. 171, 55 L. Ed. 421, 31 S. Ct. 342, Ann. Cas. 1912B, 1312]; Zonne v. Minneapolis Syndicate, supra [220 U. S. 187, 190, 55 L. Ed. 428, 430, 31 S. Ct. 361]."

■ II. We do not find section 37 of the statute vague or indefinite in its omission of

a definition of the business of operating an office building. That business, as we have shown, is now generally recognized as one of the important business enterprises of the country. It is suggested in the brief of the appellant that, in some of the so-called office buildings, in large cities, mercantile establishments occupy not only the ground floor but also so many of the upper floors that the courts might find great difficulty in deciding in some instances whether a building is so used or occupied as to lose its identity as an office building. It is suggested also that an office building might not be so well recognized as such in a small town as in a large city. All of that is true; but it means only that it is the province of the courts to decide, in any case where the question is tendered, whether a party on whom the tax is sought to be imposed is in the business of operating an office building. In Von Baumbach v. Sargent Land Co., 242 U. S. 516, 37 S. Ct. 201, 204, 61 L. Ed. 468, after reviewing the fifteen Corporation Tax Cases that were decided under the title Flint v. Stone Tracy Co., supra, the court said: "It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court." There is no doubt that the appellant in the present case is engaged in the business of operating an office building.

III. The argument that the tax in contest is an income tax, because it is based upon the income—or gross income—from the business that is taxed, is not well founded. The tax in contest is as plainly an excise tax, called a license tax, as was the tax in contest in the Corporation Tax Cases, supra. Almost every license tax levied under Act No. 190 of 1932 is based upon, or graduated according to, the gross income from the business that is taxed.

IV. The argument of the appellant that the tax in contest is a direct tax upon office buildings, and hence invalid for the several reasons set forth in the argument, is founded in some measure upon an expression in the opinion rendered by this court in State v. City Savings Bank & Trust Co., 170 La. 426, 127 So. 890, 891. In that case, decided in 1930, the tax collector claimed the license tax on the business of leasing the surplus space in the bank's building, under the omnibus clause in Act No. 205 of 1924 and Act No. 299 of 1926. In those acts the Legislature did not expressly levy a license tax on the business of operating an office building. The only question therefore was whether the business was embraced in the omnibus clause, levying the tax on "any other business not provided for in this Act." In deciding that the Legislature did not intend to include the business of leasing office space in a bank building, in the omnibus clause, the court said:

"The Legislature was thoroughly aware of the fact that banks and others were constantly engaged in leasing for offices, the surplus space in buildings owned and occupied by them, and, in many instances, in supplying these offices with heat, water, and elevator service, while supplying themselves with the same. It is fair, therefore, to presume that had the Legislature entertained any intention of imposing licenses for the exercise of the right of leasing such surplus spaces, it would have followed the usual course of expressly imposing them, especially since the business,

if it may be termed one, is quite extensively conducted. * * * The Legislature had no intention of imposing license taxes upon banks or others for leasing the surplus space for offices in buildings, owned and occupied by them, or for leasing the buildings themselves. Even had the Legislature desired to levy such a tax, it is doubtful if it could have constitutionally done so, for the right to lease one's own property may be regarded as an incident of ownership, and a license tax thereon as a property tax in the guise of an excise tax, the levy of which would affect the uniformity of taxation. See J. & A. Freiberg Co. v. Dawson et al. (D. C.) 274 F. 420; Id., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638."

It is plain, therefore, that the doubt which the court expressed, in State v. City Savings Bank & Trust Co., as to whether a license tax on the business of operating an office building would be really a direct tax upon the property itself, was not essential to the question before the court, and was not a part of the decision rendered in the case.

The attorney for the tax collector admitted on the trial of this case that, if the tax in contest were a direct tax upon office buildings, it would be in excess of the constitutional limit on property taxes. But the tax in contest is not invalid, for any of the reasons assigned in the appellant's argument that it is a direct tax upon the property, because in fact it is not a direct tax upon the property, but a license tax upon the business in which the property is used or employed.

The distinction between a tax upon the rents or income of property not employed in any business that is subject to a license tax,

and a license tax exacted for the privilege of carrying on a business in which property is employed, is recognized in the decisions cited in the appellant's brief, viz.: J. & A. Freiberg Co. v. Dawson, Attorney General of Kentucky (D. C.) 274 F. 420; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638, and Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759; Id., 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108.

The distinction made in Pollock v. Farmers' Loan & Trust Co., was explained in Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969. And in Flint v. Stone Tracy Co., supra, the court quoted from Knowlton v. Moore, the language of the chief justice, viz.:

"Undoubtedly, in the course of the opinion in the Pollock Case, it was said that if a tax was direct within the constitutional sense, the mere erroneous qualification of it as an excise or duty would not take it out of the constitutional requirement as to apportionment. But this language related to the subject-matter under consideration, and was but a statement that a tax which was in itself direct, *because imposed upon property solely by reason of its ownership*, could not be changed by affixing to it the qualification of excise or duty. Here we are asked to decide that a tax is a direct tax on property which has at all times been considered as the antithesis of such a tax; that is, that it has ever been treated as a duty or excise, because of the particular occasion which gives rise to its levy."

And, referring to the Corporation Tax Law, in Flint v. Stone Tracy Co., the court said:

"The act now under consideration does not impose direct taxation upon property solely because of its ownership, but the tax is within the class which Congress is authorized to lay and collect under article 1, § 8, clause 1 of the Constitution, and described generally as taxes, duties, imposts, and excises, upon which the limitation is that they shall be uniform throughout the United States."

In Von Baumbach v. Sargent Land Co., supra, after reviewing the Corporation Tax Cases, the court applied the test of distinction between a direct property tax and a license tax on the business in which property is employed, viz.:

"It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes."

■■ V. The argument that the tax in contest is invalid as a license tax because it is not graduated is founded upon the fact, first, that the tax is levied only upon those operating office buildings *who derive revenue therefrom*, and not upon those who derive no revenue from the operating of office buildings, and, second, that the statute does not fix a minimum license tax. The Constitution, article 10, § 8, provides that "license taxes may be classified, graduated or progressive." Assuming that that means that license taxes *must* be classified or graduated or progressive, any reasonable method of graduation will suffice. State v. O'Hara, 36 La. Ann. 93. The omission of the Legislature, in this instance, to fix a minimum license tax means merely that any one engaged in the business of operating an office building who derives any revenue therefrom must pay the tax. The exemption of those who derive no revenue from the operation of office buildings is not an arbitrary exemption or discrimination, because those who do not derive any revenue from their business are not in the same class with those who do derive revenue from their business. The statute is not invalid or defective in that respect.

■ This discussion brings us, logically and necessarily, to a consideration of the method of computing the license tax of "one-tenth of one per cent of the gross rent or compensation therefrom." If the word "therefrom," in the statute, means from the business on which the license tax is levied, i. e., the business of operating an office building, the judgment appealed from is excessive in so far as it imposes or computes the tax upon the rent or revenue from that part of the building which is occupied by retail stores and is not used in the business of operating an office building. On the other hand, if the word "therefrom," in the statute, means from the building itself, the tax upon the right to receive the rent from that part of the building not employed in the business of operating an office building would be a direct tax upon that part of the building, and would be, therefore,

*to that extent,* unconstitutional. But, from the context of the statute, there is little or no doubt that the word "therefrom" means "from the business of operating an office building." The word "therefrom" is used twice in the opening sentence, levying the tax, viz.: "Any person, firm, corporation or association of persons operating any office building and deriving revenue therefrom, whether same is operated in connection with any other business or not, shall pay a license tax equal to one-tenth (1/10) of one per cent of the gross rent or compensation therefrom." It cannot be doubted that the word "therefrom," as first used in the statute, means "from the business on which the license tax is levied"; i. e. from the business of operating an office building. And it is reasonable to assume that, where the word "therefrom" is repeated in the same sentence, it means the same thing; i. e., "from the business of operating an office building." It is certain that the Legislature did not intend to levy or compute the tax upon revenue not derived from the business of operating an office building, because the tax is levied, not upon all persons, firms or corporations engaged in the business of operating office buildings, but only upon those "deriving revenue therefrom"; i. e., from the business on which the tax is levied. To say that the Legislature did not intend to *levy* the tax of one-tenth of 1 per cent. upon revenues not derived from the business that is taxed, but intended to *compute* the tax of one-tenth of 1 per cent. upon revenues not derived from the business that is taxed, would be anomalous. To say that the tax of one-tenth of 1 per cent. is to be *computed* on revenues not derived from the business that is taxed would be, in substance, the same as to say that the tax of one-tenth of 1 per cent. is levied upon such revenues.

Our conclusion is that this license tax of one-tenth of 1 per cent. should be computed only upon the revenues derived from the business of operating an office building, and not upon rents or revenues derived from the leases on that part of the property not employed in the business of operating an office building. The judgment appealed from, therefore, must be reduced to one-tenth of 1 per cent. of the $41,656.81 of revenues derived from the business of operating the office building.

The judgment is reduced in amount to $41.-65, plus interest thereon at 2 per cent. per month from the 1st day of March, 1933, and 10 per cent. attorney's fee on this principal and interest; and, as thus amended, the judgment is affirmed.

BRUNOT, J., recused.

ODOM, J., dissents in part.