## STATE v. UNITED FRUIT CO.
### No. 14739.

Court of Appeal of Louisiana. Orleans.
Feb. 26, 1934.

Chas. J. Rivet, of New Orleans, for the State.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for appellee.

**WESTERFIELD, Judge.**

This is a suit by the state of Louisiana for the collection of a license tax from the defendant corporation. There was judgment below dismissing the suit, and plaintiff has appealed.

The license tax alleged to be due is based upon the alleged operation of an office building by the defendant, and the suit is brought under the authority of section 37 of Act No. 190 of 1932, which reads as follows: "Any person, firm, corporation or association of persons operating any office building and deriving revenue therefrom, whether same is operated in connection with any other business or not, shall pay a license tax equal to

one-tenth (1/10) of one per cent of the gross rent or compensation therefrom; provided, however, that any person, firm, corporation or association of persons owning and occupying any portion of the said office building in the carrying on of its own business that only that part of the rent or compensation received from other persons, firms, corporations or association of persons shall be deemed as rent or compensation under this Act. Provided, further, that where the said building is owned by a subsidiary corporation, all of the capital stock of which, except directors qualifying shares, if any, are owned by said corporation, shall be considered the same as if the building were owned by the parent corporation and the area used by them for which rent is paid shall not be considered as rent under this section."

The defendant in its answer denied that it was engaged in the business of operating an office building within the provision of and in the sense intended by section 37 of Act No. 190 of 1932, and, in the alternative, avers that, if the said section of the act referred to may be construed as contemplating the imposition of a license tax upon its office building, it is unconstitutional because not authorized by sections 1, 3, and 8 of article 10 of the Constitution of the state of Louisiana of 1921 and also because of its conflict with article 1, section 8, of the Constitution of the United States, with reference to foreign commerce.

In dismissing the suit below, the judge, a quo, did not pass upon the constitutional questions raised in defendant's answer, holding that the business of defendant upon which a tax was attempted to be collected in this proceeding did not come within the purview of section 37 of Act No. 190 of 1932. Consequently the only question before us is whether the section contemplated the imposition of a tax upon the character of office building business conducted by the defendant or not. The case was tried upon an affidavit of the vice president of the defendant corporation introduced by defendant's counsel without objection—in effect, an agreed statement of fact. From this document it appears that the defendant is the owner of a ten-story building sometimes called "United Fruit Building," situated on the corner of St. Charles and Union streets in the city of New Orleans, and bearing the municipal number 321 St. Charles street. The building was erected in 1921 on a site formerly occupied by the Louisiana Lottery Company building, which defendant occupied under lease from 1899 to 1920, when it was purchased by de-

fendant, demolished, and the present structure erected. The United Fruit Company occupies the basement and the first, second, third, and fourth floors of the building and the greater part of the fifth floor in the conduct of its business of operating ocean going vessels in foreign commerce. The other floors of the building are occupied by corporations owned in whole or in part by the United Fruit Company and by firms and corporations unconnected therewith; defendant's counsel occupying the entire tenth floor. The revenue derived from corporations entirely disassociated with defendant for the year 1932 amounted to $13,779.76; that derived from its counsel for the same year amounting to $8,000.04. The rental charged against subsidiaries, but from which no actual cash was collected, the charge being made for some bookkeeping purpose, amounted to $11,372.96. The defendant employed a building manager, a building superintendent, and an assistant building superintendent, three elevator boys, who operated four elevators, seven porters, one night watchman, and one painter. Water and heat were supplied to all tenants and porter service to all but two, who preferred to have their own porters.

The contention of the defendant is that it is not in the business of operating an office building because it is merely renting the surplus space in a building which it intends ultimately to occupy in its entirety in the future, when the reasonable expansion of its business will demand greater space. The fact that a part of its building is leased to tenants is said to be unimportant and simply an incident suggested by business expediency; a ten-story building being necessary to justify the use of the land upon which it is erected because of its great value resulting from its advantageous commercial location. Otherwise, it is said, the cost of housing defendant's business in the desirable locality it occupies would be prohibitive, or, in any event, ill-advised. It is pointed out that by excluding all tenants who might be said to have some connection with defendant's business, such as its subsidiaries and its attorneys, only 17.1 per cent. of the building, or approximately one-sixth of the space is occupied by outsiders.

We find that section 37 of Act No. 190 of 1932 provides that "any person, firm, corporation or association of persons operating any office building and deriving revenue therefrom, whether same is operated in connection with any other business or not, shall pay a license tax equal to one-tenth (1/10) of one

per cent of the gross rent or compensation therefrom." It is apparent that if an office building is operated, whether in connection with any other business or not, the act intended to levy a tax upon the revenues of that business, and, the act continues, if the operator of the office building occupies any part of it "in the carrying on of its own business that only that part of the rent or compensation received from other persons, firms, corporations or association of persons shall be deemed as rent or compensation under this Act."

Exclusive of the space occupied by subsidiaries and counsel, about one-seventh of defendant's building is occupied by tenants whose business is entirely disassociated from defendant's. These tenants paid the defendant for the offices during the year 1932, $13,779.76, and, if we add the $8,000 paid by defendant's attorneys, the sum received in rental would be $21,779.76. A very considerable portion of the space in the building, it thus appears, is rented by the defendant and quite sizeable revenue derived therefrom. We can understand the advantage to be derived from the erection of a structure of sufficient size upon expensive ground and the renting of its surplus space until such time as defendant's business expansion would require it, but, to the extent of the revenue derived from the occupants of the surplus space, it seems obvious to us that the defendant is "operating an office building" and "deriving revenue therefrom" within the meaning and intendment of the act of 1932, for, by its very terms, it expressly contemplates the imposition of a tax upon those who operate an office building in whole or in part, whether occupied by the owner or not. The situation would be different, we take it, if there were one or two unoccupied offices in the building from which a comparatively negligible revenue were derived, when, it might be said that the insignificance of the space and the revenue could not be classed as an office building business.

In the case of State of Louisiana v. Heymann, 151 So. 901, 905, our Supreme Court held that the operating or managing of an office building is now well recognized as the carrying on of an occupation or business, citing the fifteen cases bearing the title Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, and quoting from the cited cases the following: "It is evident, from what this court (U. S. Supreme Court) has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court."

After considering the particular facts in the instant case, we say, as our Supreme Court said in the Heymann Case: "There is no doubt that the appellant (appellee) in the present case is engaged in the business of operating an office building."

For the reasons assigned, the judgment appealed from is reversed, and this cause is remanded to the civil district court for the parish of Orleans for further proceedings according to law and consistent with the views herein expressed.

Reversed and remanded.