**43 So.2d 909**

**STATE ex rel. FONTENOT, Collector of Revenue v. STANDARD DREDGING CORPORATION.**

No. 38784.

Dec. 9, 1949.

Rehearing Denied Jan. 9, 1950.

Appeal Dismissed March 13, 1950.
See 70 S.Ct. 574.

C. Ellis Ott, Bogalusa, Stephen B. Rodi, Baton Rouge, and Lamar F. Miller, Baton Rouge, for plaintiff and appellant.

Deutsch, Kerrigan & Stiles, New Orleans, Eberhard P. Deutsch, Robt. E. Leake, Jr., New Orleans, of counsel, for appellee.

FOURNET, Chief Justice.

The State of Louisiana is appealing from a judgment dismissing its suit against the Standard Dredging Corporation wherein it seeks to recover taxes accrued through 1945 in the total sum of $11,701.35, with interest and penalties, claimed as being due the State of Louisiana under the provisions of Act No. 25 of the Second Extra Session of 1935, as amended, commonly known as the power tax statute.

This suit, when originally instituted in December, 1940, was to recover taxes alleged to be due the State at that time in the amounts of $150, additional taxes for the year 1939, and $1,012.50, taxes for the fiscal year ending July 31, 1940, with interest, penalty and attorney's fees. Defendant filed certain exceptions, and because of repeated continuances the trial on the merits was delayed. In December, 1945, in order to avoid a multiplicity of suits, a supplemental petition was filed claiming taxes which had accrued through 1945.

The defendant, a New York corporation with its principal office and place of business in New York City but qualified to do business in Louisiana, is a contractor engaged in deepening, widening, improving, extending and clearing navigable water-

ways, and for many years has been pursuing this business in the State of Louisiana under license as contractor issued pursuant to the provisions of Section 24 of Act No. 15 of the Third Extra Session of the Louisiana Legislature for the year 1934, commonly known as the general occupational license tax statute. In the conduct of its business defendant uses dredges which are licensed by the Bureau of Marine Inspection and Navigation of the Department of Commerce of the United States to engage in the coasting trade. These dredges are operated by mechanical power produced by their machinery, and the tax here sought to be imposed is based on the power generated by the engines of defendant's dredges in the conduct of its business while the dredges were on waters within the territorial limits of the State of Louisiana, under the authority of Sec. 3, Act No. 25 of the Second Extra Session of 1935, as amended, Act No. 5 of 1935, 4th Ex.Sess., § 1, the pertinent part of which provides:

*"In addition to all other taxes of every kind imposed by law,* every person, firm, corporation or association of persons engaged in the State of Louisiana in any business or occupation which person, firm, corporation or association of persons uses in the conduct of such business or occupation at any time, electrical or mechanical power of more than ten horsepower and does not procure all the power required in the conduct of such business or occupation from a person, firm, corporation or association of

persons subject to the tax imposed by Section 1 or Section 2 of this Act, shall be subject to the payment of an excise, license or privilege tax of Fifty Cents (50¢) per annum for each horsepower of capacity of the machinery or apparatus, known as the 'prime mover' or 'prime movers,' operated by such person, firm, corporation or association of persons, for the purpose of producing power for use in the conduct of such business or occupation; * * *." (Emphasis supplied.)

It is the contention of the defendant, in which it was sustained by the lower court, that the imposition of this license tax constitutes double taxation. Defendant argues that it has paid to the State an occupational license tax on the basis of gross receipts of its business as contractor for the years during which the power tax is claimed, and the generation of the mechanical power is a necessary part of its business as contractor; and that therefore the power tax as applied to it, already licensed as a contractor, is void under Article X, Section 8 of the Louisiana Constitution, and under the Fourteenth Amendment to the Federal Constitution, as dual taxation. Further, defendant contends that the tax, as applied to defendant's vessels, invades the admiralty and commerce jurisdictions of the United States, in a field in which Congress, by providing for the enrolling and licensing of such vessels, has exercised exclusive control, and deprived the states of any authority further to license or tax the operation of such vessels, or the means of their operation, in the exercise of their federal licenses.

The jurisprudence of Louisiana with reference to power tax statutes implies an adverse answer to defendant's first contention. See State ex rel. Porterie v. H. L. Hunt, 182 La. 1073, 162 So. 777, 103 A.L.R. 1; State v. Interstate Natural Gas Co., Inc., 200 La. 52, 7 So.2d 612; State v. Triangle Drilling Co., Inc., 214 La. 273, 37 So.2d 598.

■ Article X, Section 8 of the Louisiana Constitution provides that license *taxes* may be levied on such classes of persons, associations of persons and corporations pursuing any business or occupation as the Legislature may deem proper (with certain exceptions), and provides that such license taxes may be classified, graduated or progressive; however, there is no limitation as to the number or kind of license taxes which may be imposed under this provision of the Constitution and one person may avail himself of one or more different privileges, for each of which he may be required to pay a tax or license fee. The requirement frequently made essential to the existence of double taxation in the unconstitutional sense, namely, that both impositions must be against the *same taxable subject,* is here lacking, for in the case of the occupational license, the tax is imposed for the privilege of engaging in the business of contractor in the State, whereas in the case of the power tax, the levy is

based on the use of electrical or mechanical power in the conduct of a business, measured by the horsepower of capacity of the machinery used in the production of the power. It follows that although the defendant has paid the occupational license tax, there is no infringement of his constitutional rights because of liability for a specific license tax upon the use of a particular agency necessary to be employed in the conduct of his business. See 21 Am. & Eng. Enc. Law, p. 787; City of St. Louis v. Weitzel, 130 Mo. 600, 31 S.W. 1045; Harder's Fireproof Storage & Van Co. v. City of Chicago, 235 Ill. 58, 85 N.E. 245, 14 Ann.Cas. 536; Macon Sash, Door & Lumber Co. v. City of Macon, 96 Ga. 23, 23 S.E. 120; Browne v. City of Mobile, 122 Ala. 159, 25 So. 223.

The authorities relied on by the defendant in support of its argument that this tax constitutes double taxation, namely, Williams v. Garignes, 30 La.Ann. 1094, Walker v. City of New Orleans, 31 La.Ann. 828, and State v. City Savings Bank & Trust Co., 170 La. 426, 127 So. 890, are not controlling here. As was very aptly pointed out by this court in the case of Lionel's Cigar Store v. McFarland, 162 La. 956, 969, 111 So. 341, 346, wherein the holdings in the first two cases were reviewed: "In Williams v. Garignes, Tax Collector, the court merely construed the statute requiring a license tax 'from each keeper of a livery stable or yard, or livery and sale stable, with stalls for horses or mules,

twenty-five dollars; for every public hack twenty-five dollars,' as meaning that either a livery stable keeper or a public hack driver was liable for the $25 license tax, but that neither was liable for two such license taxes. In Walker v. City of New Orleans, the ruling was that an ordinance was invalid which required the owners or drivers of vehicles kept for hire to attach to each vehicle a pair of license plates furnished by the city and to pay an exorbitant tax as the price of each pair of plates. The city attorney, admitting that the ordinance was not valid as an exercise of the taxing power for raising revenue, contended that the tax was valid as a police regulation. The only question therefore was whether the imposition of the tax was a legitimate exercise of the police power; and the court held that it was not."

In the third case relied on by the defendant, State v. City Savings Bank & Trust Co., the tax collector claimed the license tax on the business of leasing surplus space in the bank's building, under the omnibus clause of an act of the Legislature which did not expressly levy a license tax on the business of operating an office building. The only question therefore was whether such business was embraced in the omnibus clause, levying the tax on "any other business not provided for in this Act," [170 La. 426, 127 So. 891] and the court held that the Legislature did not so intend.

We pass now to a consideration of defendant's second contention. Relying on

the cases of Sinnot v. Davenport, 22 How. 227, 16 L.Ed. 243, Harmon v. City of Chicago, 147 U.S. 396, 13 S.Ct. 306, 37 L.Ed. 216, Moran v. City of New Orleans, 112 U.S. 69, 5 S.Ct. 38, 28 L.Ed. 653, and Hall v. DeCuir, 95 U.S. 485, 24 L.Ed. 547, defendant urges that, as applied to its vessels, the tax sought to be here imposed invades the admiralty and commerce jurisdictions of the United States. A study and analysis of these cases shows that they are authority only for the proposition that laws enacted by states and their subdivisions which in effect regulate commerce or interfere with navigation are, to that extent, unconstitutional and void. In Sinnot v. Davenport, an Act of Alabama provided that before a boat could leave the port, certain formalities of registration had to be complied with, under penalty of a fine, to be recovered by suit against the owners or attachment against the boat. Harmon v. City of Chicago concerned a city ordinance which sought to regulate navigation on the Chicago River, and required the owners of vessels to obtain licenses under penalty of a fine. In Moran v. City of New Orleans, a city ordinance established the rate of license to be collected from those running tow-boats to and from the Gulf of Mexico, under penalty of injunction until the license was paid. And Hall v. DeCuir simply held that an act of the Legislature which set up rules and regulations for public carriers of passengers, including steamboats, was not applicable to a passenger-carrying steamship plying between New Orleans, Louisiana,

and Vicksburg, Mississippi, since the application of such regulations as to it would constitute a direct interference with the freedom of interstate commerce.

The right to regulate commerce and control navigation is in the Congress of the United States, Const. art. 1, § 8, the various states, in adopting the Constitution, having surrendered to the Federal Government all authority in such matters; and the states and their political subdivisions are therefore without authority to enact laws which will interfere with commerce or which will impede or place a burden on navigation. However, the tax here imposed, as previously stated, is solely on the use of electrical or mechanical power produced by the defendant corporation and used in its business while within the territorial limits of the State of Louisiana, and is on only that part of the power which is used in connection with the particular business of dredging, and not on that part which may be used in the navigation of the vessels—though produced by the same machinery. It is clear, therefore, that the imposition of the power tax in no way affects the permission granted under the Federal license to navigate waters of the United States for the purpose of carrying on the coasting trade, and imposes no additional condition to the privilege of carrying on such trade; nor does it result in the regulation or impeding of navigation.

For the reasons assigned, the judgment of the lower court is annulled and set aside,

and it is now ordered that there be judgment in favor of the State of Louisiana and against the Standard Dredging Corporation in the sum of $8,343.00, representing the total tax due, plus $2,048.25 as penalty, together with six (6%) per cent per annum interest on the tax due for each of the tax years involved, i. e., on $150.00 from September 1, 1939, until paid; on $1,012.50 from September 1, 1940, until paid; on $1,064.50 from September 1, 1942, until paid; on $3,782.00 from September 1, 1943, until paid; and on $2,334.00 from September 1, 1944, until paid; plus an additional amount of ten (10%) per cent on the total amount of taxes, penalties, and interest, for attorneys' fees and costs; and that the lien and privilege of the State of Louisiana on all property of the defendant Standard Dredging Corporation within the State be recognized and enforced for the payment of the above tax, penalty, interest, attorneys' fee and costs.